IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ACUITY, a Mutual Insurance Company, </br></br> Plaintiff, </br></br> vs. </br></br> CIRCLE "R" MECHANICAL, INC. and RENAISSANCE ASSOCIATES I, LP, </br></br> Defendants. | Case No. 2:18-cv-00123 |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the plaintiff, ACUITY, a Mutual Insurance Company, by and through its attorney, Stephen M. Brandenburg of CAMELI & HOAG, P.C., and for its Complaint for Declaratory Judgment against the Defendants, CIRCLE "R" MECHANICAL, INC. and RENAISSANCE ASSOCIATES I, LP, states as follows:

### Parties

1. Plaintiff, Acuity, a Mutual Insurance Company is a domestic insurance company organized and incorporated under the laws of the state of Wisconsin with its principal place of business located at 2800 South Taylor Drive, Sheboygan, Wisconsin.

2. Pursuant to Wis. Code 611.01, *et al.*, a domestic insurance company is an incorporated entity and subject to Wisconsin's corporation laws, and therefore, Acuity is a citizen of the state of Wisconsin.

3. Defendant, Circle "R" Mechanical, Inc. ("Circle R"), is an Indiana corporation with its principal place of business at 1801 N. Pine Ridge Drive in

Laporte, Indiana, and is a citizen of the state of Indiana.

4. Defendant, Renaissance Associates I, L.P. ("Renaissance"), is a Missouri limited partnership with its principal place of business at 1300 South Hampton Avenue in St. Louis, Missouri.

5. Upon information and belief, Renaissance is owned by its partners: (1) EVDEM, Inc.; (2) Robert W. Hawkins; (3) Jakob Medve; (4) GGS Corporation; and (5) DYA Trust.

6. Upon information and belief, all of the partners of Renaissance are citizens of the state of Missouri.

7. As its only members are citizens of the state of Missouri and the company is principally located in Missouri, Renaissance is considered a citizen of the state of Missouri.

## Jurisdiction and Venue

8. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a declaration regarding the construction and application of an insurance policy issued by Acuity to Circle "R" Mechanical, Inc.

9. In the underlying matter captioned *Renaissance Associates I, LP v. Circle "R" Mechanical, Inc., et al.*, Renaissance seeks to recover in excess of $75,000 from Circle R and Aquatherm for the alleged negligent installation of piping in Renaissance Towers Buildings 524 and 535 in Hammond, Indiana, both of which are owned by Renaissance.

10. Additionally, Acuity seeks a ruling on the obligation to pay for the cost

of a defense in the underlying matter for Circle R, and this cost of defense alone could potentially be in excess of $75,000.

11. Due to the amount in controversy in the underlying matter and the expected cost of defense for Circle R for said matter, the amount in controversy in this declaratory judgment action is in excess of $75,000.

12. This Court has jurisdiction over the subject matter in this action pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the Plaintiff and the Defendants, who are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

13. Venue is proper in this District under 28 U.S.C. § 1400(a) because a defendant may be found in this District. Furthermore, or in the alternative, venue is proper in this District under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims at issue occurred in this District, and a defendant resides and does business in this District.

## The Underlying Case

14. On August 31, 2017, Renaissance filed a Complaint in the matter *Renaissance Associates I, LP v. Circle "R" Mechanical, Inc., et al.,* in the Lake County, Indiana Superior Court under Cause No. *45D01-1709-PL-00098*, seeking damages under theories of breach of contract, breach of express warranty, breach of unwritten express warranty, breach of implied warranty, and breach of implied warranty of fitness for a particular purpose ("Underlying Complaint").

15. A true and accurate copy of the Underlying Complaint is attached

hereto as Exhibit A.

16.   According to the allegations of the Underlying Complaint, Circle R entered into a contract with Renaissance to install Aquatherm piping throughout the 10-story Renaissance Towers apartment building located in Hammond, Indiana.

17.   According to the allegations of the Underlying Complaint, the installation of the Aquatherm piping started in late 2012 and was completed on or about March, 2013.

18.   According to the allegations of the Underlying Complaint, various components of the installation began failing in 2014 and have continued to fail through the present.

19.   According to the allegations of the Underlying Complaint, Circle R failed to install the piping properly by using incorrect clamps that were excessively tightened.

20.   According to the allegations of the Underlying Complaint, the entire hot water line of the Renaissance Towers, for both buildings 524 and 535, must be replaced.

21.   Renaissance now seeks a judgment against Circle R for all of the alleged damages associated with the replacement of said water lines.

22.   On or about April 7, 2017, counsel for Renaissance issued a letter to Circle R placing the company on notice of the claims made the underlying lawsuit ("Notice of Claim").

23.   A copy of the Notice of Claim was provided to Acuity by Circle R on or

about April 13, 2017. This was the first notice Acuity received of the claims at issue in the underlying litigation.

## Count I
### (Declaratory Judgment Regarding the Lack of Commercial General Liability Coverage under the Acuity Policies)

24. Plaintiffs incorporate and re-allege the allegations contained in Paragraphs Nos. 1 through 23, as if fully alleged herein in Count I.

25. Acuity issued a Commercial General Liability policy of insurance under Policy No. K58184 to the named insured "Circle 'R' Mechanical" which was effective for the policy period of 04-01-2012 through 04-01-2013 ("2012 CGL Policy").

26. A true and accurate copy of the 2012 CGL Policy is attached hereto as Exhibit B.

27. Acuity issued substantially similar policies of insurance to Circle R for the annual policy periods from 04-01-2013 through 04-01-2017.

28. A true and accurate copy of the 2013 CGL Policy is attached hereto as Exhibit C.

29. A true and accurate copy of the 2014 CGL Policy is attached hereto as Exhibit D.

30. A true and accurate copy of the 2015 CGL Policy is attached hereto as Exhibit E.

31. A true and accurate copy of the 2016 CGL Policy is attached hereto as Exhibit F.

32. A true and accurate copy of the 2017 CGL Policy is attached hereto as

Exhibit G.

33. The Policies were issued subject to all of the policy terms, conditions, exclusions, and limitations of monetary coverage, which are incorporated as though fully set forth herein at length.

34. Pursuant to the Commercial General Liability Coverage Form in the Policies, the Policies provide an initial grant of coverage in relevant part, as follows:

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* or *property damage* to which this insurance does not apply. We may at our discretion investigate any *occurrence* and settle any claim or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and
(2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.** The insurance applies to *bodily injury* and *property damage* only if:

(1) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*;
(2) The *bodily injury* or *property damage* occurs during the policy period; and
(3) Prior to the policy period, no insured listed under paragraph 1 of Section II – Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the *bodily injury* or *property damage* had occurred, in whole or in part. If such a listed or authorized *employee* knew, prior to the policy period, that the

*bodily injury* or *property damage* occurred, then any contribution, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known prior to the policy period.

(Ex. B – Acuity Policy, CGL Form, p. 1 of 15.)

35. The Policy contains the following relevant and potentially applicable exclusions to coverage:

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**j. Damage to Property**

*Property damage* to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the *property damage* arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the *property damage* arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it

Paragraphs (1), (3) and (4) of this exclusion do not apply to *property damage* (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are *your work* and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard.*

**k. Damage to Your Product**

Property damage to your product arising out of it or any part of it.

**l. Damage to Your Work**

Property damage to your work arising out of it or any part of it and included in the *products-completed operations hazard*.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Ex. B – Acuity Policy, CGL Form, p. 4 of 15.)

    36.    The Policy contains the following relevant and potentially applicable definitions:

**13.** "*Occurrence*" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*   *   *

**16.** "*Products-completed operations hazard*":

  **a.** Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:
      (a) When all of the work called for in your contract has been completed.
      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include *bodily injury* or *property damage* arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the *loading or unloading* of that vehicle by any insured;

- (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
- (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products- completed operations are subject to the General Aggregate Limit.

**17.** "*Property damage*" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

For the purpose of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\*   \*   \*

**21.** *"Your product:"*

**a.** Means:

(1) Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product;* and

(2) The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** *"Your work:"*

    a. Means
       (1)   Work or operations performed by you or on your behalf; and
       (2)   Materials, parts or equipment furnished in connection with such work or operations.
    b. Includes:
       (1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work;* and
       (2)   The providing of or failure to provide warnings or instructions.

(Ex. B – Acuity Policy, CGL Form, p. 14-15 of 15.)

## Coverage Dispute

37. Circle R has placed Acuity on notice of the Underlying Complaint and demanded defense and indemnification from Acuity in connection with its potential liability arising from the injuries alleged by Renaissance in the Underlying Complaint.

38. The liability being asserted against Circle R in the Underlying Complaint arises from a claim by Renaissance that Circle R negligently installed piping within Renaissance's apartment building.

39. There is no commercial general liability coverage for Circle R under the Acuity policy, as the claims do not arise from an "occurrence" as defined by the policy.

40. There is no commercial general liability coverage for Circle R under the Acuity policy as the policy excludes claims for any alleged property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the *property damage* arises out of those operations."

41.     There is no commercial general liability coverage for Circle R under the Acuity policy as the policy excludes claims for any alleged property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it."

42.     There is no commercial general liability coverage for Circle R under the Acuity policy as the policy excludes claims for any alleged property damage "to your work arising out of it or any part of it and included in the *products-completed operations hazard*."

43.     There is no commercial general liability coverage for Circle R under the Acuity policy as the policy excludes claims for any alleged property damage to "your product arising out of it or any part of it."

44.     Based upon the application of the aforementioned provisions of the Policies, Acuity is not obligated to either defend or indemnify Circle R as the claims set forth in the Underlying Complaint are not covered by the Policies.

WHEREFORE, Plaintiff, ACUITY, a Mutual Insurance Company, respectfully requests this Honorable Court enter a judgment and order, declaring the rights and obligations of the parties as follows:

1.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Policies with respect to the Underlying Complaint and other claims or demands arising from or relating to the injuries allegedly sustained by Renaissance Associates I, LP;

2.     Declaring and adjudicating that Acuity has no duty to either defend or

indemnify Circle "R" Mechanical, Inc. with respect to any of the claims being made in the Underlying Complaint for any or all of the foregoing reasons;

3. Granting any such further relief that this Court deems just and equitable.

## Count II
### (Declaratory Judgment Regarding the Lack of Error and Omissions Coverage under the Acuity Policies)

45. Plaintiffs incorporate and re-allege the allegations contained in Paragraphs Nos. 1 through 23, as if fully alleged herein in Count II.

46. Acuity issued a Contractor's Errors and Omissions policy of insurance under Policy No. K58184 to the named insured "Circle 'R' Mechanical" which was effective for the policy period of policy period 04-01-2017 through 04-01-2018 ("E&O Policy").

47. A true and accurate copy of the 2017 E&O Policy is attached hereto as Exhibit H.

48. Notably, the E&O policy is a claims made policy and has a retroactive date of April 1, 2015.

49. Specifically, the E&O Policy provided in relevant part as follows:

**This is a claims-made policy. Please read the entire form carefully.**

**LIMIT OF INSURANCE**
Each Claim Limit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 1,000,000
Aggregate Limit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1,000,000
Deductible Amount (Each Claim) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        1,000

**RETROACTIVE DATE**
This insurance does not apply to claims or damages if the wrongful act out of which the claim or damage arose or the product recall commences before the retroactive date, if any, shown below.

Retroactive Date: 04-01-15

(Ex. H, p. 1.)

    50.    The E&O Policy further provided as follows:

**b.**  This insurance applies only if:

   (1) The original *suit* is brought against the insured or the *product recall* is initiated in the United States of America (including its territories and possessions), Puerto Rico or Canada; and

   (2) The:
      (a) *Wrongful act* occurs; or
      (b) The *product recall* is initiated;
   on or after the Retroactive Date shown in the Declarations and prior to the end of the policy period; and

   (3) Prior to the original inception date of continuous coverage under Contractors Errors and Omissions Broad Coverage Part no insured had knowledge of:
      (a) A *wrongful act* or any resulting claim or *suit,* or
      (b) Any suspected *wrongful act* which would result, or could have reasonably been expected to result in a claim or *suit*, which the insured had not reported to us as required by paragraph 2, Duties in the Event of a Wrongful Act, Product Recall, Claim or Suit under Section V, Conditions or paragraph 6, Representations, under Section V Conditions; whether or not any notice of such *wrongful act,* claim or *suit* was furnished to any other insurer; and

   (4) A claim is first made against any insured, in accordance with paragraph c below, during the policy period or during any Extended Reporting Period we provide under Section VI – Extended Reporting Periods.

(Ex. H, p. 4.)

    51.    The policy then defines "Wrongful Act" as follows:

**20.** *"Wrongful act"* means:

  **a.** A negligent act, error or omission in preparing, designing, using or recommending any designs, methods, procedures, *specifications* or materials in *your product* or *your work;*

  **b.** A negligent act, error or omission in supervising, reviewing or inspecting the work performed by any subcontractor where such work is or will be part of *your product* or *your work;* or

    **c.** Incorporating into *your product* or *your work* any item which contains a defect, deficiency or inadequacy;

which results in *faulty design, faulty workmanship* or *recall expenses. Wrongful act* also includes the manufacture, installation or sale of a *defective product.*

(Ex. H, p. 14.)

    52.    The underlying lawsuit is not covered by the E&O policy based upon the application of the policy "Retroactive Date".

    53.    Based upon the "Retroactive Date" language, the policy will <u>not</u> cover any claims arising from a "wrongful act" that occurred prior to April 1, 2015.

    54.    In this case, the wrongful act at issue, the alleged negligent installation of the piping, occurred sometime in 2012. As this installation occurred before the "Retroactive Date" of the policy, the policy will not be applicable to the claims at issue.

    55.    There is no errors and omissions liability coverage for Circle R under the Acuity policy as the policy is not triggered by claims arising from a "wrongful act" that occurred prior to April 1, 2015.

    56.    Based upon the application of the aforementioned policy provisions, Acuity is not obligated to either defend or indemnify Circle R as to the claims set forth in the Underlying Complaint.

    WHEREFORE, Plaintiff, ACUITY, a Mutual Insurance Company, respectfully requests this Honorable Court enter a judgment and order, declaring the rights and obligations of the parties as follows:

    1.    Declaring and adjudicating the rights and obligations of the parties

with respect to coverage under the E&O Policy with respect to the Underlying Complaint and other claims or demands arising from or relating to the injuries allegedly sustained by Renaissance Associates I, LP;

    2.    Declaring and adjudicating that Acuity has no duty to either defend or indemnify Circle "R" Mechanical, Inc. with respect to any of the claims being made in the Underlying Complaint for any or all of the foregoing reasons;

    3.    Granting any such further relief that this Court deems just and equitable.

    By:    /s/ Stephen M. Brandenburg

Stephen M. Brandenburg (#28935-45)
CAMELI & HOAG, P.C.
5920 Hohman Avenue
Hammond, Indiana 46320
Telephone:  312-726-7588
Email: sbrandenburg@camelihoaglaw.com
*Attorneys for Acuity, A Mutual Insurance Company*